UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RECORD BUCK FARMS, INC., a Florida
Corporation,

          Plaintiff,

-vs-                                              Case No.  5:07-cv-47-Oc-10GRJ

THE HONORABLE MIKE JOHANNS, as
Secretary of Agriculture, UNITED STATES
DEPARTMENT OF AGRICULTURE,

          Defendants.
_____

## O R D E R

This case is before the Court for consideration of the following motions: the Plaintiff's Emergency Motion for Enforcement of this Court's Preliminary Injunction Against the United States Department of Agriculture ("USDA") (Doc. 13), to which the USDA has responded (Doc. 21); the USDA's Motion to Vacate the Preliminary Injunction and Dismiss the Complaint as Moot (Doc. 26), to which the Plaintiff has responded (Doc. 32); the Plaintiff's Motion to Vacate, or in the Alternative to Enjoin, the Enforcement of the USDA's Emergency Interim Rule Effective March 16, 2007 (Doc. 30), to which the USDA has responded (Doc. 39); and the Plaintiff's Motion to Amend the Complaint Upon Specified Conditions (Doc. 31).  The parties' motions are now ripe for consideration, and the March 16, 2007 interim rule is due to be held in place pending the USDA's compliance with the rulemaking requirements of the Administrative Procedure Act.

**Background**

The Plaintiff, Record Buck Farms, Inc., is a Florida Corporation with its principal place of business in Howey-in-the-Hills, Lake County, Florida. The Plaintiff is a supplier of containerized citrus plants grown at its citrus nursery located in Lake County. The Plaintiff ships citrus plants in one-gallon and three-gallon containers to customers such as Home Depot, Lowe's, Wal-Mart, garden centers, private nurseries, and plant brokers. The Plaintiff's customers are located throughout Florida, in non-citrus-producing states of the United States, and in Canada. Since 1994, the Plaintiff has shipped citrus plants to non-citrus producing states. The Plaintiff has asserted, without contradiction, that citrus canker has never been detected at - or within five miles of - its nursery.

Through passage of the Plant Protection Act, 7 U.S.C. §§ 7701-7786, Congress vested the USDA with plenary authority to promulgate regulations to detect, control, eradicate, suppress and prevent the spread of plant pests, such as citrus canker. Beginning in 1984, the USDA promulgated regulations related to citrus canker that affected Florida citrus growers. In that year, the USDA issued emergency regulations quarantining Florida due to what was believed to be a state-wide citrus canker outbreak. See 49 Fed. Reg. 36623 (1984). Neither those emergency regulations, nor the final rule promulgated a year later, 50 Fed. Reg. 51228 (1985), allowed the interstate shipment of citrus plants from a quarantined area. A few years later, the USDA promulgated regulations allowing, under certain circumstances, the interstate shipment of calamondin and kumquat plants

because those plants were deemed to be highly resistant to citrus canker. See 52 Fed. Reg. 7562 (1987). The USDA amended the 1985 final rule several times until, in 1990, the Department promulgated regulations that lifted the state-wide citrus canker quarantine and imposed one limited to Manatee County, Florida, where citrus canker was positively identified and efforts to eradicate that disease were ongoing. See 55 Fed. Reg. 37442 (1990).[1] The 1990 regulations allowed the designation of discrete locations within Florida as quarantined areas, and placed restrictions on the movement of citrus-related items in interstate commerce from those areas. See id. Specifically, any area within two miles of a location where citrus canker was detected would be deemed a quarantined area and, thus, subject to eradication efforts. See id. In addition, in 1990, the eradication of citrus canker through destruction of affected citrus plants began, a joint effort between the USDA and Florida Department of Agriculture and Consumer Services ("FDACS") that cost those agencies approximately $900 million. According to the USDA, "[b]etween 1990 and 2006, citrus canker spread, was believed to have been eradicated as a result of an aggressive eradication program, and was reintroduced and spread again throughout Florida." Doc. 39 at 11.

In 2004 and 2005, hurricanes and other factors resulted in the rapid spread of citrus canker throughout Florida. According to the USDA, seventy-five percent of Florida's

---

[1] The USDA lifted the state-wide quarantine because scientific data revealed that what had previously been reported throughout the state as citrus canker was actually another disease. See 55 Fed. Reg. 37442 (1990).

commercial citrus groves are now within five miles of locations where citrus canker has been detected. Thus, the USDA determined that citrus canker eradication was no longer feasible in Florida, and that the entire state needed to be quarantined in order to prevent the spread of citrus canker to other citrus-producing states. As a result, in late 2006, after notice and comment rule-making, the USDA adopted an interim rule that amended its citrus canker regulations and extended a quarantine to the entire State of Florida, thus placing restrictions on the interstate movement of citrus products from the State. The August 2006 interim rule amended certain sections of 7 C.F.R., Part 301, and, on August 1, 2006, was published in the Federal Register at Vol. 71, No. 147, pp. 43345-52.

The August 2006 interim rule - through inadvertent mistake according to the USDA's counsel - allowed for the interstate shipment of citrus products to non-citrus-producing states under certain conditions described in 7 C.F.R. § 301.75-6 (2006). Specifically, the August 2006 interim rule allowed the interstate movement of citrus plants if: (a) every nursery containing citrus in Florida is inspected for citrus canker "by an inspector at intervals of no more than 45 days"; and (b) personnel, vehicles and equipment within quarantined areas involved in the inspection, maintenance, harvesting, or related services in citrus groves are sanitized in accordance with certain requirements specified in the rules. See 7 C.F.R. §§ 301.75-6(a)(2) & 301.75-11(d) (2006).

In early 2007, the Plaintiffs attempted to ship containerized citrus plants in interstate commerce pursuant to 7 C.F.R. § 301.75-6 (2006). The USDA refused to allow the shipments. The Plaintiffs then filed this suit, requesting preliminary and permanent

injunctive relief allowing interstate shipment of their product to non-citrus-producing states. At the Plaintiff's request, the Court set an emergency hearing and directed the USDA to respond before that hearing to the Plaintiff's motion. The USDA contended that, because it had never in the past allowed citrus plants to travel outside of a quarantined area, the Plaintiff's interpretation of the August 2006 interim rule in a way that allowed the interstate shipment of containerized citrus plants was "absurd."[2] However, at the emergency hearing, while not abandoning its argument that the August 2006 interim rule prohibited the interstate shipment of the Plaintiff's citrus plants, the USDA tacitly conceded that compliance with the plain language of § 301.75-6 would permit the Plaintiff to continue its interstate business, and the Department candidly admitted that it made an error in drafting and promulgating the August 2006 interim rule.

On February 13, 2007, following an emergency hearing attended by all parties, the Court entered an Order preliminarily enjoining the USDA "from prohibiting the interstate

---

[2] Despite the USDA's primary argument that the Plaintiff's interpretation of the August 2006 interim rule was erroneous, the USDA attached to its response the affidavit of Stephen Poe, who stated that:

> Since the publication of the interim rule, it became apparent to APHIS that there are aspects of the rule that need to be amended. APHIS planned to implement theses [sic] changes in a subsequent rulemaking that would not only have made the technical changes described above . . . but also would have made additional changes based upon public comment and additional scientific data. In light of the assertions by Record Buck, APHIS has begun the process of amending the regulation to make it clear that the intention of 7 C.F.R. § 301.75-6 was not to provide a protocol for the movement of nursery stock from a quarantine state into interstate commerce, and to move the decontamination provision to a different section. APHIS plans to publish this technical correction as soon as practicable.

Affidavit of Stephen Poe at ¶ 33.

shipment of containerized citrus plants which meet the requirements of 7 C.F.R. § 301.75-6(a) from the State of Florida to non-citrus-producing areas." 02/13/07 Order (Doc. 11) at 5. In that Order, the Court found that despite the USDA's assertion that it had erred in its promulgation of 7 C.F.R. § 301.75-6 (2006), the plain and unambiguous language of that regulation permitted the interstate shipment of the Plaintiff's product under certain conditions. Moreover, the Court found that a preliminary injunction was appropriate because:

> The Plaintiff is suffering irreparable injury for which it will have no adequate remedy at law, and the continued failure of the USDA to adhere to the interim rule and allow interstate shipment of containerized citrus plants to non-citrus-producing states, when the rule is complied with, has and will continue to result in significant economic loss to the Plaintiff which cannot be redressed absent the issuance of this preliminary injunction.
>
> There is no evidence before the Court that the USDA's adherence to the requirements of the interim rule will result in any significant risk to the citrus industry in other citrus-producing states. The only risk alluded to by the USDA is that of private "re-transportation" to citrus-producing states of <u>infected</u> individual citrus plants by a person who purchased the plants at a retail outlet in a non-citrus producing state. The Court finds this risk attenuated at best[3] and, as a result, the irreparable harm being suffered by the Plaintiff outweighs any risk to the citrus industry in other citrus-producing states, the public or the USDA.[4] The USDA's continued failure to adhere to the interim rule disserves the public interest by suppressing the free flow of interstate commerce and the shipment of properly inspected containerized citrus plants from sanitized facilities.

---

[3] There is no evidence that any of the Plaintiff's plants are infected with citrus canker, and compliance with the interim rule will require periodic inspections to insure this healthy condition. (footnote from 02/13/2007 Order).

[4] The harm caused by citrus canker is economic only; it causes unsightly blemishes on the surface of the fruit and can cause the ultimate death of the tree, but the fruit remains safe to eat. (footnote from 02/13/2007 Order).

02/13/07 Order at 4-5.  However, the Court noted that, "Nothing in this Order should be construed as preventing the USDA from undertaking any appropriate process to amend, alter, modify, or repeal any of its regulations, including, in particular, any rule or regulation involved in this proceeding."  02/13/2007 Order (Doc. 11) at 5.

On March 9, 2007, the Plaintiff filed an emergency motion requesting that the Court enforce its preliminary injunction.  In that motion, the Plaintiff asserted that it had complied with the provisions of 7 C.F.R. § 301.75-6 (2006), but that the USDA continued to prohibit interstate shipment of the Plaintiff's containerized citrus plants.  The Court again set an emergency hearing and directed the USDA to respond to the Plaintiff's motion before that hearing.  The USDA defended its position on the ground that the Plaintiff could not show that the provisions of 7 C.F.R. § 301.75-6 (2006) had been complied with because every "nursery" in the State of Florida had not been inspected in the last 45 days as required by the regulation.  However, the issue of contention concerned the USDA's interpretation of the term "nursery" in the regulation to include every retail outlet in Florida that sells containerized citrus plants, including every Wal-mart, Lowe's, Home Depot, and independent garden center in Florida.  The Plaintiff took a narrower view of the term "nursery," and noted that the retail outlets specified by the USDA as not being inspected, obtain the citrus plants they sell from properly inspected commercial nurseries, and asserted that the USDA was making this eleventh-hour argument that required double-inspections solely to defeat the Court's preliminary injunction.

Two days before the hearing on the Plaintiff's motion to enforce the injunction, the USDA informed the Court that on March 16, 2007 it had issued an emergency interim rule that prohibited the interstate shipment of citrus plants from Florida, and that this development rendered the proceedings in this case moot. In addition to several other alterations, 7 C.F.R. § 301.75-6(a) now reads as follows:

> Regulated nursery stock may not be moved interstate from a quarantined area except for immediate export in accordance with paragraph (c) of this section; Provided, that calamondin and kumquat plants may be moved interstate from a quarantined area in accordance with paragraph (b) of this section.

7 C.F.R. § 301.75-6(a) (2007). In addition, under the heading "Emergency Action," the emergency interim rule stated that:

> This rulemaking is necessary on an emergency basis to address the ambiguities in § 301.75-6 and the risk associated with the interstate movement of citrus nursery stock and other regulated articles from areas quarantined for citrus canker. Under these circumstances, the Administrator has determined that prior notice and opportunity for public comment are contrary to the public interest and that there is good cause under 5 U.S.C. 553 for making this rule effective less than 30 days after publication in the Federal Register.

March 2007 Emergency Interim Rule at 14.

At the hearing on the Plaintiff's motion to enforce the preliminary injunction, the issue of mootness was raised, as was the issue of the USDA's compliance with the Administrative Procedures Act ("APA") in promulgating the March 2007 emergency interim rule. Accordingly, the Court terminated the hearing and ordered additional briefing, including briefing on the issue of the USDA's compliance with the APA. The USDA filed

the administrative record relating to its promulgation of the March 2007 emergency interim rule, and the parties filed their briefs in a timely manner.

## Discussion

The central issue at this point in this litigation is whether the USDA had good cause to forgo the rulemaking requirements of section 553 of the Administrative Procedures Act, and if not, what result.  Because the March 2007 emergency interim rule was promulgated without any notice or opportunity for comment and was immediately effective, two sections of the APA are pertinent here.  Section 553(b) requires that general notice of proposed rulemaking be published in the Federal Register, and section 553(d) requires that a rule be published not less than thirty days before its effective date.  See 5 U.S.C. § 553. However, each of those requirements has a "good cause" exception.  An agency may avoid the general notice requirement "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." § 553(b)(B).  In addition, an agency may avoid the requirement of thirty day notice "for good cause found and published with the rule." § 553(d).

The good cause exceptions to the rulemaking requirements of § 553 are to be narrowly construed an infrequently invoked.  See U.S. Steel Corp. v. EPA, 595 F.2d 207, 214 (5th Cir.), clarified on other grounds, 598 F.3d 915 (5th Cir. 1979);[5] Am. Fed. of Gov.

---

[5] The case law of the Fifth Circuit prior to September 30, 1981 has been adopted as
(continued...)

Employees v. Block, 655 F.2d 1153, 1156 (D.C. Cir. 1981) (these exceptions should "be narrowly construed and only reluctantly countenanced" and are not "'escape clauses' that may be arbitrarily utilized at an agency's whim [but rather the] use of these exceptions by administrative agencies should be limited to emergency situations" (citing S. Rep. No. 752, 79th Cong., 1st Sess. (1945), reprinted in Administrative Procedure, Act Legislative History, 79th Cong. 1944-46 at 200, 201)); Xin-Chang Zhang v. Slattery, 55 F.3d 732, 746 (2d Cir. 1995) ("The legislative history of the Administrative Procedure Act demonstrates that Congress intended the exceptions in § 553(b)(B) to be narrow ones."). Moreover, § 553(b)(B) "should not be used . . . to circumvent the notice and comment requirements whenever an agency finds it inconvenient to follow them." U.S. Steel Corp., 595 F.2d at 214; see Action on Smoking and Health v. Civil Aeronautics Bd., 713 F.2d 795, 800 (D.C. Cir. 1983) ("The public interest exception to notice and comment requirements contemplates real harm to the public, not mere inconvenience to the agency."). As such, a court's review of an agency's good cause determination is a fact-specific, case-by-case inquiry. See Xin-Chang Zhang, 55 F.3d at 746; Petry v. Block, 737 F.2d 1193, 1199 (D.C. Cir. 1984). An agency's decision to forgo the notice and comment rulemaking requirements of the APA is reviewed under the standard supplied by 5 U.S.C. § 706(2)(D):

---

[5](...continued)
precedent in this judicial circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc).

the reviewing court shall hold unlawful and set aside agency action found to be "without observance of procedure required by law."

The "good cause" articulated by the USDA in the March 2007 emergency interim rule was two-pronged: (1) the "ambiguities in § 301.75-6"; and (2) "the risk associated with the interstate movement of citrus nursery stock and other regulated articles from areas quarantined for citrus canker." However, it is abundantly clear to the Court that the only "cause" the USDA has for the promulgation of the March 2007 interim rule on an emergency basis was the entry of the Court's preliminary injunction. Indeed, the USDA admits as much in its brief in opposition to the Plaintiff's motion to vacate the rule: "a bona fide emergency existed because one of USDA's regulations had been interpreted to allow the unprecedented movement of nursery stock from areas quarantined because of citrus canker." Doc. 39 at 16. Actually, the Court had determined not that the prior interim rule contained "ambiguities," but that its plain language allowed, under certain circumstances, the interstate shipment of citrus plants, such as the ones grown by the Plaintiff, to non-citrus-producing states.

The USDA has contended that it never intended for citrus plants such as the Plaintiff's to be shipped interstate, and has asserted that the plain language of the regulation that allowed such shipments was a result of the agency's own errors and inadvertence. Accordingly, the Court is now faced with a situation in which it must determine whether the good cause exception of § 553(b)(B) is satisfied when the "good cause" is a preliminary injunction requiring the agency to act in accordance with the plain

meaning of its own regulations, where the agency asserts that it erred in promulgating those regulations and intended from the outset that the activity it is now enjoined from prohibiting was meant to have been barred by its regulations. Moreover, the review of the administrative record filed by the USDA reveals that there is no new scientific data - i.e. data produced after the August 2006 interim rule - supporting a prohibition on interstate shipment of citrus plants to non-citrus-producing states. While the Court does not doubt that, as a general matter, there exists "a risk associated with the interstate movement of citrus nursery stock and other regulated articles from areas quarantined for citrus canker," there is nothing in the administrative record to support the USDA's assertion in its briefs that the risk necessitates "good cause" to do away with the rulemaking requirements of § 553. Especially, as here, where the shipments at issue are to non-citrus-producing states and from a commercial nursery where citrus canker has never been detected.

According to the USDA, it intended to prohibit the interstate shipment of citrus plants from quarantined areas to non-citrus-producing states in the August 2006 interim rule, which also designated the entire State of Florida as a quarantine area. The August 2006 interim rule was precipitated primarily by the unusually active 2004 and 2005 hurricane seasons, and the resulting spread of citrus canker throughout most of the State. Importantly, the August 2006 interim rule was promulgated in accordance with the notice and comment rulemaking procedures of § 553. The only intervening incident between that properly noticed interim rule and the March 2007 emergency interim rule is this Court's entry of a preliminary injunction allowing the Plaintiff to continue its business of shipping

citrus plants to non-citrus-producing states. Indeed, prior to the USDA's actions prohibiting the Plaintiff from shipping citrus plants in early 2007, the Plaintiff had engaged in the interstate shipment of citrus plants to non-citrus-producing states for approximately twelve years. Moreover, it is undisputed that the Plaintiff's nursery is free from citrus canker and that the nursery would not be in a quarantined area under the pre-August 2006 regulations because the closest location to the Plaintiff's nursery where citrus canker has been discovered is in excess of five miles away. Thus, as the Court has already found, see 02/13/2007 Order (Doc. 11) at 4-5, the harm to the public from the Plaintiff's shipment of citrus plants to non-citrus-producing states was attenuated at best, and if the USDA chose to exercise its discretion to change the applicable regulations, it should have done so while it complied with the Court's preliminary injunction.[6] Instead of taking that course of action, the USDA - for its own convenience - has sought the quick fix to its error, an emergency interim rule. There appears to the Court no reason why notice and comment rulemaking was appropriate in August 2006, but should now be forgone. The USDA cannot circumvent the notice and comment requirements of § 553 because the "agency finds it inconvenient to follow them." U.S. Steel Corp., 595 F.2d at 214 ; see also City of Waco v. EPA, 620 F.2d 84, 86 (5th Cir. 1980) ("The mere existence of deadlines for agency action, whether set by statute or court order, does not itself constitute good cause for a § 553(B)(b)

---

[6] While the Court is cognizant to the fact that similar plaintiffs would have filed suit seeking similar injunctions, the Court does not believe that other suits would have resulted in the spread of citrus canker. Each request for injunctive relief would have been decided on its merits.

exception.") (quoting U.S. Steel Corp., 595 F.2d at 213).  Accordingly, the Court concludes that the facts in this case do not support a finding of good cause under § 553(b)(B).

Nevertheless, a review of the administrative record convinces the Court that the potential economic harm described by the USDA from the interstate shipment of citrus plants from quarantined areas is sufficiently real and substantial to necessitate that the Court exercise its equitable powers to temporarily extend in place the March 2007 emergency interim rule.  "Ordinarily, when a regulation is not promulgated in compliance with the APA, the regulation cannot be afforded the force and effect of law."  Fertilizer Inst. v. EPA, 935 F.2d 1303, 1312 (D.C. Cir. 1991) (citing Chrysler Corp. v. Brown, 441 U.S. 281, 313 (1979).  "Yet, when equity demands, an unlawfully promulgated regulation can be left in place while the agency provides the proper procedural remedy."  Fertilizer Inst., 935 F.2d at 1312; see United States v. Goodner Bros. Aircraft, Inc., 966 F.2d 380, 384 (8th Cir. 1992) (same).  Here, despite the Court's finding that the March 2007 emergency interim rule was not promulgated in compliance with the APA, the Court will exercise its equitable powers to allow that emergency interim rule to remain in place until the USDA conducts a new round of notice and comment rulemaking,[7] to begin immediately.  The Court's decision is influenced by several circumstances in this case, including the USDA's position - supported by the administrative record - that it never intended to allow the

---

[7] The Court's decision on the merits of the Plaintiff's motion to vacate the March 2007 emergency interim rule and the Court's decision to hold in place that emergency interim rule moots the Plaintiff's alternative argument for an order preliminarily enjoining enforcement of the rule.

interstate shipment of citrus plants from quarantined areas. There is also the scale of the potential harm from the spread of citrus canker to other citrus-producing states in comparison to the relatively modest benefit to commercial nurseries in Florida from an injunction that would have effect only until the USDA legally promulgates the March 2007 emergency interim rule. Moreover, in taking this action the Court is gives regard to the USDA's decision that the scientific data supports the existence of a threat to citrus-producing states from the shipment of citrus plants from quarantined areas, a prediction that falls within the USDA's area of special expertise. See Baltimore Gas & Elec. Co. v. Natural Res. Defense Council, Inc., 462 U.S. 87, 103 (1983) ("When examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential.").

Finally, the unique procedural posture and current circumstances of this case necessitate the equitable relief given. Perhaps, if in response to the Plaintiff's original motion for preliminary injunction the USDA had candidly conceded the error made in the promulgation of the August 2006 interim rule, informed the Court that it intended to immediately correct its regulations to match its intentions - as it has now done - and requested an opportunity to do so, much of this litigation might have been avoided. Instead, ignoring the plain language of its regulation, the USDA initially asserted that because it has never in the past allowed citrus plants to travel outside of a quarantined area an interpretation of the August 2006 rule to contrary was absurd and the Court should

find that the USDA's past actions trump the current letter of its regulations. That position being untenable, the Court entered the preliminary injunction.

## Conclusion

Accordingly, upon due consideration, it is ordered that:

(1) the Plaintiff's Motion to Vacate, or in the Alternative to Enjoin, the Enforcement of the USDA's Emergency Interim Rule Effective March 16, 2007 (Doc. 30) is GRANTED only to the extent that the Court finds that the March 16, 2007 emergency interim rule was promulgated in violation of the APA, and DENIED in all other respects;

(2) the Court exercises its equitable discretion to allow the March 16, 2007 emergency interim rule to remain in place until the USDA conducts a new round of notice and comment rulemaking;

(3) the USDA's Motion to Vacate the Preliminary Injunction and Dismiss the Complaint as Moot (Doc. 26) is GRANTED, and the Order Granting Preliminary Injunction (Doc. 10) is VACATED as moot and the Plaintiff's Complaint (Doc. 1) is DISMISSED as moot;

(4) the Plaintiff's Emergency Motion for Enforcement of this Court's Preliminary Injunction Against the United States Department of Agriculture ("USDA") (Doc. 13) is DENIED as moot;

(5) the Plaintiff's Motion to Amend the Complaint Upon Specified Conditions (Doc. 31) is carried with the case; and

(6) the Clerk is directed to terminate all outstanding motions, and this action is abated pending further order of the Court. The abatement may be dissolved and the action reinstated by appropriate motion upon the USDA's adoption of a new rule or regulation applicable to the Plaintiff's business, or upon the Department's unreasonable delay, if any, in conducting the procedures necessary to the adoption of a new rule.[8]

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 26th day of April, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[8] Abatement of this action facilitates the USDA's orderly compliance with the Administrative Procedure Act, and also allows the Plaintiff to seek immediate review of this Order, if it wishes to do so under 28 U.S.C. § 1292(a).